In re James Kenneth FEILER and
Carol Elaine Feiler, Debtors.

Edward F. TOWERS, Trustee of the Bank-
ruptcy Estate of James Kenneth Feiler
and Carol Elaine Feiler, Debtors, Plain-
tiff,

v.

UNITED STATES of America, Depart-
ment of Treasury, Internal Reve-
nue Service, Defendant.

Bankruptcy No. 95–31075TDM.
Adversary No. 97-3242DM.

United States Bankruptcy Court,
N.D. California,
San Francisco Division.

March 3, 1998.

958

Michael J. McQuaid, Carr, McClellan, Ingersoll, Thompson & Horn, San Francisco, CA, for Plaintiff.

David L. Denier, Assistant United States Attorney, San Francisco, CA, for Defendant.

### MEMORANDUM DECISION—NOL ELECTION AS FRAUDULENT TRANSFER

DENNIS MONTALI, Bankruptcy Judge.

## I. INTRODUCTION

Plaintiff, Edward F. Towers ("Plaintiff"), the Chapter 7 trustee of the estate of the above-named debtors, James Kenneth Feiler and Carol Elaine Feiler ("Debtors"), filed this adversary proceeding against Defendant, United States of America, Department of Treasury, Internal Revenue Service ("IRS" or "Defendant"), in order to (1) avoid, under 11 U.S.C. § 548(a)(2)[1] as a fraudulent transfer, Debtors' pre-petition, irrevocable election (the "Election") to waive the carryback of a net operating loss ("NOL") under I.R.C. § 172(b)(3) and (2) claim a tax refund for the tax years 1990 and 1991. Both parties have moved for summary judgment as to the fraudulent transfer issue and have stipulated that if the Election is avoided, Plaintiff is entitled to a net tax refund of $266,032, after a stipulated offset of $21,461 is deducted from the total refund of $287,493 for both years, plus interest as allowed by I.R.C. § 6611.

This court has jurisdiction under 28 U.S.C. § 157. An action to avoid a fraudulent transfer is a core proceeding. 28 U.S.C. § 157(b)(2)(H). *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1349 (11th Cir.1988), *rev'd on other grounds, Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

Pursuant to Fed.R.Civ.P. 56(c), as incorporated by Fed.R.Bankr.P. 7056, summary judgment is available only when a party is entitled to judgment as a matter of law and when, after consideration of the evidence presented by the pleadings and other evidence in a light most favorable to the non-moving party, there remain no genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there are none, then the Court may grant summary judgment if the moving party is entitled to judgment as a matter of law. *Baxter v. MCA*, 812 F.2d 421, 423 (9th Cir.1987). This case is suitable for summary judgment since there are no genuine issues of material fact that are in dispute and judgment is appropriate as a matter of law.

For the reasons discussed below, the Court will deny Defendant's motion for summary judgment and grant Plaintiff's cross-motion for summary judgment.

1. Hereafter, "Bankruptcy Code" refers to Title 11 of the United States Code and "I.R.C." refers to Title 26 of the United States Code.

## II. BACKGROUND[2]

Debtors filed a voluntary Chapter 7 petition on March 29, 1995. Five months earlier, in October, 1994, they timely filed their federal tax return for 1993 and, at that time, made the Election pursuant to I.R.C. § 172(b)(3)[3] to waive any carryback of a $971,930 NOL. NOLs are created when a taxpayer's deductible business expenses for a given year exceed the taxpayer's income for that year. I.R.C. § 172(c). Based upon the statute in effect in 1993 when the Election was made, if an NOL is allowed, then the loss is first carried back to each of the three taxable years preceding the taxable year of such loss and then becomes a net operating loss carryover to each of the fifteen taxable years following the taxable year of the loss. I.R.C. § 172(b)(1)(A). However, by making the Election, Debtors relinquished the carryback provision and were able to carry the NOL forward from 1993, the year of the loss. The election to carry the NOL forward must be made affirmatively. I.R.C. § 172(b)(3).[4]

Had Debtors not made the Election, the NOL would have been carried back to prior tax years with a resulting tax refund of $287,493.[5] As a result of the Election, Debtors were able to reduce their postpetition taxes for the tax year 1994 by $21,461.[6] Defendant was not required to pay a tax refund of $287,493 following the Election. Further, the Stipulation states that, as of the date of the Election, the value of the future tax savings resulting from the 1993 NOL carryover was less than, and not reasonably equivalent to, the value of the tax refunds that would have resulted had the 1993 NOL been carried back.

In February, 1997, Plaintiff filed income tax refund requests with the IRS on behalf of the estate for tax years 1990 and 1991 totaling $287,493. The IRS disallowed both claims for refund on the grounds that Debtors had made the Election to carry the 1993 NOL forward. Plaintiff then filed this adversary proceeding on March 26, 1997.

## III. ISSUES

A. Is Debtors' irrevocable Election considered a "transfer" of an interest in property that may be avoided by Plaintiff trustee in bankruptcy under Bankruptcy Code § 548(a)(2)?

B. Does I.R.C. § 1398 limit Plaintiff's ability to avoid the transfer?

## IV. DISCUSSION

### A. FRAUDULENT TRANSFER

#### 1. Transfer

■ The Bankruptcy Code broadly defines transfer to encompass "every mode, direct or

2. The following discussion constitutes the court's findings of facts and conclusions of law. Fed. R.Bankr.P. 7052(a). The facts are largely found in the "Stipulation of Agreed Facts" (the "Stipulation") filed by the parties. Although there is a minor discrepancy as to the amount of the NOL ($996,818 according to Exhibit "A" to the Stipulation and $971,930 according to Plaintiff's Supplemental Memorandum of Points and Authorities), this is irrelevant since the parties have stipulated that the amount of the tax refund, to which the Plaintiff is entitled if he prevails, is $266,032 plus interest.

3. I.R.C. § 172(b)(3) provides: "ELECTION TO WAIVE CARRYBACK—Any taxpayer entitled to a Carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be *irrevocable* for such taxable year." (Emphasis added)

4. On their 1993 federal tax return, Debtors stated that "Taxpayer(s) Elect Under I.R.C. Section 172(b)(3)(c) to Forego Any Carryback of the Net Operating Loss for 1993 Shown Here"

5. The refund is not automatic. The taxpayer must file a claim for refund within the period of limitations set forth by I.R.C. § 6511(d)(2). The claim must then be allowed by the IRS in order for a refund to issue. Here the Stipulation renders such a procedure unnecessary.

6. Because Debtors carried the NOL forward on their 1994 tax return, they did not pay any income tax for 1994. Without the NOL carryover, Debtors would have owed $21,461 in income taxes for the 1994 tax year. Plaintiff agreed that, in the interest of fairness to the IRS, this $21,461 would be offset against the total refund claim of $287,493 if he prevailed.

indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." Bankruptcy Code § 101(54). The definition of transfer is a matter of federal law. *Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992), citing *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–370, 65 S.Ct. 405, 407–408, 89 L.Ed. 305 (1945).

Within the context of a fraudulent transfer, the definition of transfer is sufficiently broad to include a transfer that results in a modification of form or value of property transferred or a deposit into or withdrawal from a bank account. *See* 2 Collier on Bankruptcy ¶ 101.54(2) at 101–154 (15th ed.1997); *In re Richmond Produce Co., Inc.,* 151 B.R. 1012 (Bankr.N.D.Cal.1993); *In re Bernard,* 96 F.3d 1279 (9th Cir.1996).

In *Gibson v. United States of America (In re Russell),* 927 F.2d 413 (8th Cir.1991), the Eighth Circuit held that the debtor's prepetition irrevocable election under I.R.C. § 172(b)(3) constituted a transfer of property. In *Russell* the debtor made both a prepetition election and a postpetition election under I.R.C. § 172(b)(3). The court first analyzed the postpetition transfer under Bankruptcy Code § 549 and held that the debtor's irrevocable election (made while he was a Chapter 11 debtor in possession) constituted a transfer because the debtor "... 'disposed' of the bankruptcy estate's right to carry forward the NOLs: once Russell made the election, it could not be changed. Therefore, Russell transferred property of the estate." *Id.* at 418. The *Russell* court did not, however, separately examine whether the debtor's irrevocable prepetition election constituted a transfer within the scope of Bankruptcy Code § 548, stating that it had already determined that such election was a transfer. The court concluded that recovery under the Bankruptcy Code § 548 was appropriate because "the purpose underlying a bankruptcy trustee's avoidance powers and the danger of permitting a debtor to manipulate improperly the Tax Code requires that a trustee have the ability to avoid a debtor's irrevocable election to carry forward the NOLs under I.R.C. § 172(b)(3)." *Id.* at 417.[7]

■ The definition of transfer is as broad as possible. *In re Smiley,* 864 F.2d 562, 565 (7th Cir.1989), citing, H.R.Rep. No. 595, 95th Cong. 1st Sess. 314 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6271. In *In re Smiley,* the court held that debtor's conversion of assets from nonexempt to exempt constituted a transfer even though the transfer itself was not fraudulent. In *In re Bernard,* the Ninth Circuit held that the debtor's withdrawal of cash from a bank account constituted a transfer because the debtor parted with a claim against the bank in exchange for the cash. *Bernard,* 96 F.3d at 1279.

■ Defendant argues that because a debtor's prepetition decision to record a homestead is not an avoidable transfer, that the Election is not an avoidable transfer. *In re Messia,* 184 B.R. 176 (Bankr.D.Mass. 1995). However, as the court in *Messia* noted, the "emphasis is upon 'disposing of or parting with' interests in property, which events do not occur when a homestead is declared." *Id.* at 177. Further, Bankruptcy Code § 101(54) "does not speak in terms of an effect on creditors: rather it focuses on what, if anything, the debtor parted with." *In re Trans–Lines West, Inc.* 203 B.R. 653, 662 (Bankr.E.D.Tenn.1996) (holding under *Russell* that the debtor's prepetition revoca-

---

7. This case has a long history. The Eighth Circuit reversed and remanded the district court's order that affirmed the bankruptcy court's grant of summary judgment in favor of the IRS on other grounds. The voidable pre- and post petition issues were raised for the first time at the court of appeals by agreement of the parties. On remand, to determine debtor's intent as to actual fraud pursuant to Bankruptcy Code § 548(a)(1), the bankruptcy court ruled that trustee failed to prove that debtor actually intended to defraud his creditors and judgment was entered in favor of IRS. *In re Russell,* 154 B.R. 723 (Bankr. W.D.Ark.1993). On appeal, the district court reversed and remanded to determine whether the election constituted a constructive fraudulent transfer pursuant to Bankruptcy Code § 548(a)(2). *Streetman v. U.S. (In re Russell),* 189 B.R. 190 (W.D.Ark.1994). On remand, the bankruptcy court entered judgment in favor of trustee and IRS appealed. The district court affirmed the bankruptcy court's holding that the election constituted a constructive fraud pursuant to Bankruptcy Code § 548(a)(2). *Streetman v. United States (In re Russell),* 187 B.R. 287 (W.D.Ark.1995).

tion of its Subchapter S status constituted a transfer under Bankruptcy Code § 548). The crux of the definition is that the transferor no longer has the same rights that the transferor had prior to the transfer.

■ Here, Debtors clearly disposed of an interest in property within the meaning of Bankruptcy Code §§ 101(54) and 548. Debtors made an affirmative act to part with the right to a loss carryback refund claim in exchange for a right to offset future income against prior years' losses, a right inuring to their benefit in the future.[8] As the court in *Russell* noted, since "it is highly unlikely that the bankruptcy estate would generate enough income to offset the carried forward NOLs, the debtor, after the estate's closing, would have what remains ... to apply the NOLs against her income ." *In re Russell,* 927 F.2d at 417. Debtors' conversion of their right to carryback the NOL, which effectively disposed of their right to a current tax refund in exchange for the right to carry their NOL forward, constituted a transfer.

Accordingly, this Court finds that the Election, pursuant to I.R.C. § 172(b)(3), is deemed a "transfer" within the scope of Bankruptcy Code § 548.

### 2. Interest in Property

■ Although there is no statutory authority defining "an interest of the debtor in property," the United States Supreme Court has defined the term as "that property that would have been part of the estate had it not been transferred before the commencement

of bankruptcy proceedings." *Begier v. I.R.S.* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). Absent federal law, whether Debtors possessed an interest in the property before the transfer is a question of state law. *Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Since the Election was made under the Title 26, federal law determines the property interest of Debtors.

A net operating loss carryover is a tax attribute of the debtor that is transferred to the estate under I.R.C. § 1398(g)(1)[9] and included as property of the estate under Bankruptcy Code § 541.

Although the NOL itself is not a balance sheet asset, the NOL can be converted to an asset, namely, the right to carryback or carryover the NOL which gives rise to a claim for a tax refund. "The property interest at issue here is ... the right to carry forward the NOLs ..." *In re Russell,* 927 F.2d at 417. In this case, the parties have stipulated that had the Election not been made, Debtors or Plaintiff could have carried the NOL back and received a tax refund. The associated right to claim a refund based on the loss carryback was a property interest of Debtors at the time of the Election and would have been part of the estate had it not been transferred before the commencement of the bankruptcy case.[10]

Both the House and Senate Reports read: "Any transfer of an interest in property is a transfer, including a transfer of possession,

---

**8.** Debtors made an affirmative act that altered their rights. In somewhat analogous situations, debtors have engaged in affirmative acts by executing disclaimers to inheritances. The courts have held that such transactions cannot be attacked as fraudulent transfers because, using a relation-back doctrine under applicable state law, the disclaimers prevented the property from ever vesting in the debtors. Thus, the debtors did not have any interest in property to transfer in fraud of their creditors. *In re Simpson,* 36 F.3d 450, 452 (5th Cir.1994); *In re Atchison,* 925 F.2d 209 (7th Cir.), cert. denied sub nom., *Jones v. Atchison,* 502 U.S. 860, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991). *Cf. Mapes v. United States,* 15 F.3d 138, 141 (9th Cir.1994)(federal tax lien could not attach to property properly disclaimed under state law). There is no federal counterpart to those state statutes here. In this case, Debtors did possess an interest in property. In a

case where a debtor loses rights as a result of inaction, such as by not filing suit and permitting a statute of limitations to expire, another result might occur. However, this court need not decide the result if Debtors failed to perform such an affirmative act.

**9.** I.R.C. § 1398(g)(1) provides that "The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—(1) Net Operating Loss Carryovers—The net operating loss carryovers determined under section 172."

**10.** This is so whether as of bankruptcy the Debtors possessed only the right to claim a refund, the claim was pending, or the refund had been received by them.

custody or control even if there is not transfer of title, because possession, custody, and control are interests in property." H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6271. Here, Debtors parted with control of an interest in property, namely, the right to carryback the NOL and claim a current tax refund in exchange for the right to carryover the NOL and claim future tax refunds.

Section 541 of the Bankruptcy Code determines whether Debtors' interest in the property is property of the estate and defines property as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property is broadly defined. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

The United States Supreme Court has determined that both the right to a loss carryback refund claim and an income tax refund are "property," and "transferrable," and are property of the estate. *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514–515, 15 L.Ed.2d 428 (1966); *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). As the Historical Notes to the Bankruptcy Code indicates, *Segal* remains good law even though it was decided under the Act.

Accordingly, both the right to a loss carryback refund claim and the tax refund are interests of Debtors in property for purposes of Bankruptcy Code § 548 and are also considered property of the estate under Bankruptcy Code § 541.

### 3. Fraudulent Transfer under Bankruptcy Code § 548(a)(2)

The fraudulent transfer doctrine prohibits Debtors from transferring their property with either the intent or effect of placing their assets beyond the reach of their creditors. The underlying policy of Bankruptcy Code § 548 is to preserve the assets of the estate. *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir.1991). When Debtors made the Election to carry the NOL forward and preserve their benefits for future taxable years, they effectively placed a valuable asset beyond the reach of their creditors. Rather than immediately making a claim for a cash refund, Debtors chose to defer this tax attribute to postpetition years for their benefit and to the detriment of their creditors. The evidence suggests that Debtors were not unsophisticated and must have been aware of the impact of the Election. Debtors' 1993 tax return was prepared by a certified public accountant, totals 97 pages, and was filed five months before Debtors filed their Chapter 7 petition. If Debtors had not made the Election to part with the carryback of the 1993 NOL, they would have been entitled to file a claim for a refund of $287,493. Debtors filed their tax return five months before they filed their bankruptcy petition; their schedules indicated $596,804 in total assets and $2,927,867 in general unsecured creditor claims.[11]

In order for Plaintiff to avoid the Election as a fraudulent transfer, pursuant to Bankruptcy Code § 548(a)(2), four elements must be satisfied: (1) the transfer must have involved property of Debtors, (2) the transfer must have been made within one year of the filing of the petition, (3) Debtors must not have received reasonably equivalent value in exchange for the property transferred, and (4) Debtors must have been insolvent at the date of the transfer or became insolvent as a result of the transfer, engaged in or about to engage in a transaction or business for which any property remaining would be unreasonably small capital, or be unable to pay their debts as they became due. 11 U.S.C. § 548(a)(2). *United Energy Corp.*, 944 F.2d at 594. This court has determined, as discussed above, that the Election was a transfer and that the transfer involved an interest in property of Debtors. The parties have stipulated that the transfer was made within one year of the filing of the petition, that

---

**11.** Counsel for Defendant has suggested that Plaintiff should be pursuing the Debtors for what they did, as they benefitted directly by the Election. It is unclear how the trustee in a Chapter 7 case may maintain a fraudulent transfer case against a debtor/transferor; whether an action could have been brought against Debtors to deny their discharge under Bankruptcy Code § 727(a)(2) for transferring property to hinder, delay or defraud creditors is not before the court.

Debtors did not receive reasonably equivalent value, and that Debtors were insolvent at the date that the Election was made. Thus, all of the elements of Bankruptcy Code § 548(a)(2) have been met.

Further, Defendant benefitted directly because Defendant was not required to pay a tax refund of $287,493 following the Election. In addition, the Stipulation states that, as of the date of the Election, the value of the future tax savings resulting from the 1993 NOL carryover was less than, and not reasonably equivalent to, the value of the tax refunds that would have resulted had the 1993 NOL been carried back. Finally, the parties have stipulated that Plaintiff is entitled to a tax refund based on the carryback of the NOL if the Election is avoided. As such, Plaintiff can recover the property transferred pursuant to Bankruptcy Code § 550(a)(1).

Accordingly, this Court finds that Debtors' Election pursuant to I.R.C. § 172(b)(3) can be avoided by the trustee as a fraudulent transfer under Bankruptcy Code § 548(a)(2).

### B. I.R.C. § 1398 DOES NOT LIMIT PLAINTIFF'S AVOIDANCE POWERS UNDER BANKRUPTCY CODE § 548

▮ Defendant contends that I.R.C. § 1398 insulates it from Plaintiff's fraudulent transfer challenge because the Election, once made, is irrevocable. That argument requires the court to presume that Bankruptcy Code § 548 is in conflict with I.R.C. § 1398, and that the latter statute, more recently added and more specific in application, must control. The court disagrees.

The Bankruptcy Tax Act of 1980 created I.R.C. § 1398. Michael J. Saltzman, IRS Practice And Procedure § 10.06 (2d ed.1991). I.R.C. § 1398 provides that the bankruptcy estate constitutes a taxable entity separate from the individual debtor who files for relief under Chapter 7 or 11 of the Bankruptcy Code. I.R.C. § 1398(g) determines the allocation of the tax attributes between these two entities; the estate succeeds to certain tax attributes of the debtor, including NOL carryovers determined under I.R.C. § 172. The tax attributes are determined as of the first day of the debtor's taxable year in which the bankruptcy case commences. I.R.C. § 1398(g)(1). *See* fn. 9.

Defendant argues that because the Election under I.R.C. § 172(b)(3) is irrevocable and because Plaintiff succeeds to the Debtors' tax attributes, he is permanently saddled with the consequences of the Election.[12] It suggests that it is up to Congress to deal with the equitable considerations that might compel the result Plaintiff seeks, and that the court must apply the words of the I.R.C. literally, without regard to the Bankruptcy Code.[13]

Although a trustee in Chapter 7 (and Plaintiff here) receives the tax attributes of the debtors, including the carryover of an NOL, there is nothing in the Bankruptcy Code to suggest that a trustee cannot alter these attributes through the use of the trustee's avoidance powers. Bankruptcy Code § 548 enables the trustee to avoid transfers made and obligations incurred by the debtor within one year of the filing of a petition if the elements of either actual or constructive fraud are met.

Thus, although here Plaintiff succeeded to the tax attributes of the Debtors, he is free to use his powers under Bankruptcy Code § 548 to avoid, as a fraudulent transfer, transactions of the debtor made prior to the date of the petition.

The avoidance powers granted to the Plaintiff are "so broad that they even enable trustees to avoid transfers considered 'irrevocable' under state law." *In re Russell*, 927 F.2d at 416. The trustee does not seek to revoke the election but to avoid it. "Once an election is avoided, however, it is as if the election had never been made...." *Id.* at

---

**12.** "In other words, the estate must take the carryovers as it finds them" IRS's Opening Brief, p. 8, ll 18–19.

**13.** "There is no reason to believe that Congress thought that the careful bankruptcy tax scheme it had established in (I.R.C. § 1398) would be subject to upset by the general avoidance provisions it had enacted two years before." IRS's Opening Brief, p. 9, fn. 2.

417. It should be self-evident that if the Election were not irrevocable, the Plaintiff would simply revoke it and take the NOL carryback; this action to avoid the Election under Bankruptcy Code. § 548 would not have been necessary. Only a creditor, pre-petition, or a bankruptcy trustee, postpetition, has the power to avoid a fraudulent transfer; the transferor would not have the ability to revoke the transfer.[14]

"When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature ..." *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974), citing *Brown v. Duchesne,* 19 How. 183, 60 U.S. 183, 15 L.Ed. 595 (1856). Because I.R.C. § 1398 was enacted against the background of the Bankruptcy Code, it must necessarily complement, and not alter, the purposes of the Bankruptcy Code. By providing that the estate succeeds to the tax attributes of the debtor, I.R.C. § 1398 allows a potential reduction in adverse tax consequences to the estate and permits it to maximize the recovery available to the creditors. As such, I.R.C. § 1398 promotes a primary purpose of the Bankruptcy Code: to convert the bankruptcy estate into the maximum amount of cash for distribution to creditors.

It is well established that "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). There is no actual conflict between I.R.C. § 1398 and Bankruptcy Code § 548. "[T]he policy behind section 548 is to preserve the assets of the estate."

*In re United Energy Corp.,* 944 F.2d 589, 597. I.R.C. § 1398 does not contravene this goal. Further, there does not appear to be any authority that supports the notion that the tax attributes that a trustee receives are indelibly affixed such that the trustee may not utilize statutory avoidance powers to alter those attributes. In short, Plaintiff is not required to take the Debtors' interest in property "as is" because the trustee has the power to recapture property that the Debtors fraudulently transferred. The two statutes are neither incompatible nor inconsistent with one another.

Finally, although the rights of the parties are generally fixed on the date that the bankruptcy case commences, Bankruptcy Code § 541(a)(3) includes as property of the estate "[a]ny interest in property that the trustee recovers under section ... 550...." Thus, once the Election is avoided under Bankruptcy Code § 548 and recovered by the trustee under Bankruptcy Code § 550[15], the interest in property becomes part of the property of the estate under Bankruptcy Code § 541.

Accordingly, this court concludes that I.R.C. § 1398 does not limit the trustee's avoidance powers under Bankruptcy Code § 548.

**V. CONCLUSION**

This Court determines that an "election" to carry a net operating loss forward under I.R.C. § 172(b)(3)(c) is a transfer under Bankruptcy Code § 548. Further, the right to a loss carryback refund claim and the tax refund are considered both interests of Debtors in property and property of the estate. Debtors' irrevocable Election to forego the carryback of their 1993 NOL and instead carry the NOL forward may be avoided as a fraudulent transfer pursuant to Bankruptcy Code § 548(a)(2). Plaintiff can recover a net tax refund from the IRS in the stipulated

---

14. *Heffernan v. Bennett & Armour,* 110 Cal. App.2d 564, 243 P.2d 846 (1952) (transfer in fraud of creditors is valid as to grantor and all persons claiming under him, and as to all persons, except creditors of grantor); *Severance v. Knight–Counihan Co.,* 29 Cal.2d 561, 177 P.2d 4 (1947)(one who conveys property to defraud creditors cannot revoke the conveyance); *In re Pajaro Dunes Rental Agency, Inc.,* 174 B.R. 557, 595 (Bankr.N.D.Cal.1994).

15. Bankruptcy Code § 551 preserves Plaintiff's right to use the NOL carryback which would have occurred absent the Election.

amount of $266,032, plus interest as allowed by I.R.C. § 6611.

For the reasons stated above, Defendant's motion for summary judgment will be denied and Plaintiff's cross-motion for summary judgment will be granted. Counsel for Plaintiff should submit orders and a form of judgment consistent with the foregoing and should comply with B.L.R. 9022–1.